**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTONIO MINNIS, JR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22CV263 HEA** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Antonio Minnis' Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 1]. The United States of America has responded to the Motion pursuant to the Court's Show Cause Order. For the reasons set forth below, the Motion will be denied.

### Factual Background

The factual background is set forth in the record, the Guilty Plea Agreement, and the United States of America's Response.

### Procedural Background

On January 3, 2019, the government charged Petitioner by way of Criminal Complaint with Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g). Petitioner made his Initial Appearance before Judge Patricia L. Cohen on the same date. Judge Cohen appointed the Office of the Federal Public Defender to represent Petitioner.

On January 10, 2019, Petitioner was indicted by a Grand Jury alleging the same offense charged in the Criminal Complaint. A Superseding Indictment followed on February 21, 2019. The Superseding Indictment included a second count: Distribution of a Controlled Substance (Death Resulting) in violation of Title 21, United States Code, Section 841(a)(1). The Superseding Indictment specifically alleged that Petitioner had distributed "a controlled substance to M.D. on July 11, 2018," and that "the death of M.D. resulted from the use of such controlled substance distributed by defendant."

On behalf of Petitioner, attorney John P. Rogers ("Rogers") investigated the offenses charged in the Superseding Indictment, and also into Petitioner' personal history. Rogers included Petitioner' mother in those discussions. Rogers obtained documents and records pertaining to Petitioner's educational background from St. Louis Public Schools, Stix Early Childhood Center, Boys and Girls Town of Missouri, Parkway North High School, and the St. Louis County Special School District. In addition, Rogers obtained medical records from the Social Security Administration, Mercy Clinic, and the Missouri Department of Corrections. These records revealed that, at various times in his life, Petitioner had been diagnosed with Major Affective Disorder, Attention Deficit Disorder, an unspecified "learning disability," Intermittent Explosive Disorder, Bipolar Disorder, Borderline Personality Disorder, and /or Schizophrenia Schizoaffective Disorder.

2

Despite these previous diagnoses and based upon his many years as a defense attorney, Rogers did not consider any of these disorders or conditions to present a viable defense to any charge in the Indictment. He informed Petitioner of the same. Petitioner himself elected not to request a mental health evaluation. In accordance with his wishes, Rogers did not request such an evaluation. He did provide the records to the government in an effort to negotiate a more favorable resolution for Petitioner. After receiving the mitigation information, the government made a more favorable plea offer than the plea offer that had been previously extended.

On January 16, 2020, Rogers filed a Waiver of Filing Pretrial Motions on Petitioner' behalf. The waiver noted that Petitioner "agree[d] and concur[red] in the decision not to raise any issues by way of pretrial motions."   At Petitioner' request, the Court scheduled the matter for a change of plea hearing on February 3, 2020.

On February 3, 2020, the parties appeared before the Court for a hearing on Petitioner's change of plea. The plea was offered in conjunction with a written Guilty Plea Agreement (the "Agreement") and pursuant to Fed. R. Crim. P. 1(c)(1)(C). The Agreement provided that, in exchange for Petitioner's plea of guilty to Distribution of a Controlled Substance, a lesser included offense, the government would move to dismiss the remaining count. The parties agreed that, at

3

the time of sentencing, both the government and Petitioner would recommend a
sentence of 180 months' imprisonment. The Agreement provided that in
accordance with Fed. R. Crim. P. 11(c)(1)(C), both parties would have a right to
withdraw from the Agreement if the Court declined to impose a 180-month
sentence.

At the time of his guilty plea, Petitioner was placed under oath. The Court
began by ensuring that Petitioner did, in fact, wish to plead guilty. Having done so,
the Court embarked on a lengthy colloquy in which it established that Petitioner
was not under the influence of drugs or alcohol, was not taking any medication,
and understood that his answers were subject to the penalty of perjury. When asked
whether he had ever been diagnosed with a mental illness, Petitioner responded
that he had been diagnosed with "schizophrenia, bipolar disorder, and depression
disorder." Rogers then advised the Court that Petitioner was "being medicated for
each of those disorders, and he has received and taken his medication, according to
the doctor's recommendations, today." Rogers further assured the Court that he
had "met with [Petitioner] in detail before this plea," and that he was "satisfied that
[Petitioner was] competent to proceed." Petitioner made no representation or
statement to the contrary.

Having learned that Petitioner had been diagnosed with mental illness, the
Court inquired further to ensure Petitioner' competency. Specifically, the Court

4

asked, "When were you diagnosed with any or all of those mental illnesses, Mr. Minnis?" Petitioner responded, "Early childhood, sir." Rogers then interjected, informing the Court, "I obtained a series of psychological records, and his initial diagnosis for depression came shortly after the age of 6. Schizophrenia was diagnosed later; bipolar disorder in between the two, adolescence I would say, generally speaking."

The Court then asked Petitioner, "since your original diagnosis, Mr. Minnis, have you continuously been taking medication?"   Petitioner responded, "Yes, sir." Petitioner also confirmed that he had been taking his medications since he had been confined and that he did so "every day."

Following the discussion regarding Petitioner's diagnoses and medications, the Court asked him, "How are you feeling today, Mr. Minnis?" Petitioner answered, "Feeling great, sir." The Court then asked Petitioner, "In your own words, tell me why you've come to court with your lawyer. What do you want to do with your case?" Petitioner responded, "I came to court to enter my plea of guilty." Rogers then reiterated that he had no reason to believe that Petitioner was not competent to enter a plea. Thereafter, the Court noted, "on the examination of the defendant and inquiry of counsel, as well as the Court's observations of the defendant here in open court during this part of the colloquy, the Court concludes that the defendant is competent to proceed at this time."

Having found Petitioner competent to proceed, the Court engaged him in a discussion regarding his attorney. First, the Court asked whether Petitioner "had the opportunity to meet with [his] lawyer and talk with him about [the] case?" Petitioner assured the Court that he had. The Court also ensured that Petitioner "had sufficient time and ample opportunity to meet with [Rogers] and talk about [his] case." Petitioner confirmed that Rogers had "give[n] [him] advice about [his] case as [he] talked about it with [Rogers]" and that Rogers had talked with Petitioner "about the facts and the law in relation to those things." The Court asked Petitioner whether Rogers had talked with him about what his "options were and discovery and all those kinds of things." Petitioner responded, "Yes, sir." Similarly, Petitioner answered in the affirmative when he was asked whether he was "satisfied with the advice that [Rogers] gave," and whether Rogers had answered Petitioner' questions "fully, completely, and to [his] satisfaction." Petitioner denied that there was "anything that [he] still needed to know or wanted to know about [his] case that [he was] still confused about." He further denied that there was "anything about [his] case that [he] still [did] not understand."

The Court further inquired into Petitioner's relationship with Rogers, asking whether there were "any witnesses that [Petitioner] wanted [his] lawyer to contact or that he should have contacted for [Petitioner] but did not contact?" Petitioner

6

answered no. Petitioner also indicated that there was no "investigation that [he] wanted [Rogers] to do for [him] or that [Rogers] should have done for [him] that [Rogers] didn't do." The Court asked Petitioner whether there was "anything at all that [he] wanted Mr. Rogers to do for [him] in this case that he's failed to do or refused to do on [Petitioner'] behalf." Petitioner answered no. Petitioner assured the Court that he was "fully satisfied with the work that [Rogers] had done for [him], and that he had no "complaints against [Rogers] in any regard as [his] attorney."

After ensuring that Petitioner had been fully advised by his attorney and he had no complaints about Rogers' performance or representation, the Court went on to fully apprise Petitioner of his Constitutional right to a trial and the other rights that accompany a trial. When asked, Petitioner denied having any questions about his constitutional rights. The Court also advised Petitioner that his guilty plea, if made, would result in a judgment of guilt just as if he had been convicted at a trial. The Court advised Petitioner that despite the nature of the plea agreement, the ultimate sentence to be imposed would be solely up to the Court. The Court further advised Petitioner that if he were to plead guilty, he would be waiving his right against self-incrimination because he would be required to admit to the facts giving rise to the plea. Petitioner affirmatively indicated that he understood and that he was sure that he wanted to enter a plea of guilty. Petitioner confirmed that he had

reviewed the Superseding Indictment with his attorney and that he had understood the same. He indicated that he had no questions about the Indictment or anything contained in it. He acknowledged that he had discussed with his attorney the range of punishment applicable to the offense, and after the government accurately recited the range of punishment, Petitioner advised the Court that it had not surprised him in any way. Petitioner denied that anyone was forcing him to plead guilty and indicated that he had not been threatened or promised anything as an inducement for his plea. To the contrary, Petitioner represented that he was pleading guilty voluntarily and of his own free will.

As the Court referred to the parties' Guilty Plea Agreement, Petitioner acknowledged once again that he had reviewed it with his attorney and understood everything contained in it. He indicated that he had no questions about anything in the Guilty Plea Agreement. After the government summarized the substance of the agreement, Petitioner confirmed that he had heard it and that it was consistent with his understanding of it. He also confirmed his desire to plead guilty pursuant to those terms.

Before accepting Petitioner' plea, the Court asked the government to indicate what facts it would prove beyond a reasonable doubt had the matter proceeded to trial. The Court asked Petitioner whether those facts were "true and correct." Petitioner responded, "Yes, sir." (Id.). When asked for his plea, Petitioner

8

answered, "Guilty." The Court indicated that it would enter its order and findings that the defendant is entering his plea of guilty knowingly, voluntarily, and of his own free will, with a full understanding of the nature and consequences of his plea of guilty, and, furthermore, that he is knowingly and voluntarily waiving his rights to a trial by jury and all rights incident thereto; further finding that the defendant is fully cognizant of the range of punishment applicable to the charge.

When he entered his guilty pleas, Petitioner was 27 years old. He had graduated from high school, earning a diploma. Both Rogers and the government advised that they had no reason to believe that Petitioner was not competent to proceed. Petitioner made no statement to the contrary.

Prior to sentencing, the United States Probation Office prepared a Pre-Sentence Investigation Report as ordered. The Pre-Sentence Investigation Report contains a complete recitation of Petitioner' mental health history, as well as the medications he was prescribed to treat those conditions.

Petitioner did not file a motion to withdraw his plea. He appeared for sentencing on August 6, 2020. Prior to imposing the sentence, the Court asked whether the parties had any objections to the Pre-Sentence Investigation Report. There were none, and the Court adopted its findings of fact and its calculation of the United States Sentencing Guidelines.

In asking the Court to accept the parties' jointly recommended sentence of

180 months, Rogers commented upon Petitioner' mental health history. He spoke specifically about the medications prescribed to Petitioner to treat his mental health conditions. Rogers noted that Petitioner had been taking those medications since he had been incarcerated. The Court granted allocution, during which Petitioner stated,

> I apologize for what I've done to your child, to your son. It was not my intentions [sic] to never [sic] hurt anyone or hurt him. He was actually a friend and I never meant for this to happen. I have to go to sleep every night knowing I hurt someone. That was never my intentions [sic] to do so.
>
> I really just ask you to forgive me for my wrongful doings and ask you to just forgive me.

At no time did Petitioner express confusion or a lack of understanding. Petitioner did not suggest that he was innocent or that sentence should not be imposed for any reason. The Court sentenced Petitioner to a term of 180 months imprisonment.

Petitioner did not file Notice of Appeal, so his conviction became final on August 20, 2020. Petitioner filed the instant Motion to Vacate on March 3, 2022.

## Claim for Relief

Petitioner claims counsel was ineffective for failing to request a psychological evaluation prior to permitting him to plead guilty.

## Legal Standards

Relief Under 28 U.S.C. §2255

A federal prisoner seeking relief from a sentence under 28 U.S.C. § 2255 on

the ground "that the sentence was imposed in violation of the Constitution or laws

of the United States, or that the court was without jurisdiction to impose such

sentence, or that the sentence was in excess of the maximum authorized by law, or

is otherwise subject to collateral attack, may move the court which imposed the

sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Federal

habeas relief is limited to rectifying "jurisdictional errors, constitutional errors, and

errors of law." *Raymond v. United States*, 933 F.3d 988, 991 (8th Cir. 2019). Errors

of law, moreover, only constitute grounds for relief under § 2255 when such error

"constitute[s] a fundamental defect which inherently results in a complete

miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979)

(internal quotation omitted). Movant bears the burden to prove he is entitled to

relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

Ineffective Assistance of Counsel

"The standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.E.2d 674 (1984), provides the framework for evaluating [Movant's] ineffective-assistance-of-counsel claim." *Anderson v. United States*, 762 F.3d 787, 792 (8th Cir. 2014). [Movant] "must show that his counsel's performance was deficient and that [he] suffered prejudice as a result" to prove a violation of his Sixth Amendment rights. *Id.*

"Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011) (internal quotation omitted). "*Strickland* sets a 'high bar' for unreasonable assistance." *Love [v. United States]*, 949 F.3d [406], 410 [8th Cir. 2020] (quoting *Buck v. Davis*, 137 S. Ct. 759, 775 (2017)). Only a performance "outside the wide range of reasonable

professional assistance" is constitutionally deficient. *Id.* (internal quotation omitted). "We make every effort to eliminate the distorting effects of hindsight and consider performance from counsel's perspective at the time." *Id.* (internal quotation omitted).

"Prejudice requires the movant to establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bass*, 655 F.3d at 760 (quoting *Strickland*, 446 U.S. at 694).

*O'Neil v. United States*, 966 F.3d 764, 770-71 (8th Cir. 2020).

It is well-established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. *United States v. Davis,* 452 F.3d 991, 994 (8th Cir.2006); *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating ineffective assistance of counsel is on a defendant. *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir.2003).

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir. 2005), *cert. denied,* 546 U.S. 882 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is highly deferential, and the Court "presumes counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The Court does not second-guess trial strategy or rely on the

benefit of hindsight, *id.,* and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma-Rodriguez,* 423 F.3d 830, 836 (8th Cir. 2005). If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins,* 92 F.3d 666, 671 (8th Cir.1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*

The second part of the *Strickland* test requires that Movant show that he was prejudiced by counsel's error, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Anderson,* 393 F.3d at 753-54, quoting *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. When determining if prejudice exists, the Court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. U.S.,* 452 F.3d 1009, 1012-13 (8th Cir. 2006).

The first prong of the *Strickland* test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

U.S. 52, 59 (1985).

Right to Evidentiary Hearing

The Court must hold an evidentiary hearing to consider claims in a § 2255

motion "'[u]nless the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d

1040, 1043 (8th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255).

Thus, a movant is entitled to an evidentiary hearing "'when the facts alleged, if

true, would entitle [the movant] to relief.'" *Payne v. United States*, 78 F.3d 343,

347 (8th Cir. 1996), quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir.

1986). The Court may dismiss a claim "without an evidentiary hearing if the claim

is inadequate on its face or if the record affirmatively refutes the factual assertions

upon which it is based." *Shaw*, 24 F.3d at 1043, citing *Larson v. United States*, 905

F.2d 218, 220-21 (8th Cir. 1990).

Since the Court finds that Movant's claims can be conclusively determined

based upon the parties' filings and the records of the case, no evidentiary hearing

will be necessary.

Timeliness of Motion

28 U.S.C. § 2255(f) generally requires a § 2255 movant to file a motion

within one year of the judgment becoming final. It states:

14

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires. See *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008) (because defendant did not file a direct appeal, his conviction became final when the period for filing a notice of appeal expired.).

Petitioner was sentenced on August 20, 2020. He did not file an appeal of his sentence. To be timely under § 2255(f)(1), Petitioner had until August 20, 2021, to bring his § 2255 motion. This motion was filed on March 3, 2022, so his § 2255 motion is time barred and must be dismissed unless, in this case, equitable tolling applies

Equitable Tolling

15

The Eighth Circuit has recognized that the doctrine of equitable tolling is available to a § 2255 movant, but only "under limited conditions, for example, where extraordinary circumstances beyond a prisoner's control prevent the timely filing." See *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001*); United States v. Martin,* 408 F.3d 1089, 1092 (8th Cir. 2005). Equitable tolling is to be used infrequently, see *Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002), and will not be applied if the habeas movant has not diligently pursued his rights. *Frinch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007).

"Equitable tolling is an exceedingly narrow window of relief." *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Petitioner argues that because of the COVID-19 pandemic and his mental impairments, he should be allowed to proceed despite his failure to timely file his Petition.

This Court and others have rejected requests for equitable tolling premised upon pandemic-related lockdowns and lack of law library access when there was no evidence the prisoner had diligently pursued his rights. *See Amerson v. United States*, No. 4:22-CV-1034-SRC, 2022 WL 17718615, at *2 (E.D. Mo. Dec. 15, 2022)(A claim of inability to access a law library due to a COVID-19 lockdown was insufficient to warrant application of equitable tolling where the movant failed to establish he was pursuing his rights diligently beforehand); *Mims v. United*

*States*, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021)(*Howard v. United States*, 2021 WL 409841, at *4 (E.D. Mo. Feb. 5, 2021) (collecting cases holding that a lack of law-library access generally does not warrant equitable relief); *see also United States v. Thomas*, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020) (rejecting a claim of entitlement to equitable tolling premised upon pandemic-related lack of law library access where the movant failed to show he diligently pursued his rights before the lockdown); *United States v. Barnes*, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he had diligently pursued his claims). Petitioner has presented nothing to demonstrate that he diligently pursued his rights during the pandemic.   He also fails to set forth a causal connection between his failure and the pandemic; Petitioner's mother's affidavit fails to establish the causal connection element.

Likewise, Petitioner is unable to establish his mental issues caused the untimely filing.   Throughout this entire proceeding, the Court, counsel, and Petitioner himself were aware of and considered Petitioner's mental diagnoses in order to ascertain whether he was competent to proceed at each stage.   Indeed, Petitioner asked that a psychological exam *not* be ordered.   Petitioner was able to articulate his understanding of the proceedings and able to establish his

comprehension of the entirety of his case.   He now cannot attempt to use his

mental issues as an excuse for failing to timely file his § 2255 Petition.   He was

fully aware of his mental illness long before he entered his guilty plea.

Movant also claims entitlement to application of the doctrine of equitable tolling. He asserts he has long suffered from mental illness, and that the "severity of ailments [has] precluded him from seeking review of these issues sooner." (ECF No. 7 at 3). Equitable tolling can apply to the one-year statute of limitations for a motion to vacate under 28 U.S.C. § 2255, and excuse a late filing "where 'extraordinary circumstances' beyond a prisoner's control prevent timely filing." *United States v. Martin,* 408 F.3d 1089, 1092-93 (8th Cir. 2005) (citations omitted). However, equitable tolling should only apply where the movant has demonstrated that he has been pursuing his rights diligently. *See id.* at 1095 (citation omitted). Equitable tolling is an extraordinary remedy used only in rare circumstances, and "affords the otherwise time-barred petitioner an exceedingly narrow window of relief." *Jihad v. Hvass,* 267 F.3d 803, 805 (8th Cir. 2001). Application of equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id.* at 806 (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

In the case at bar, movant makes no attempt to demonstrate that he was diligently pursuing his rights. Even assuming that he could so establish, he could not demonstrate entitlement to equitable tolling on the basis of mental infirmity. Movant provides psychiatric records documenting his mental condition in early 2016, before the commencement of the limitations period. Movant does not explain, nor is it apparent, how that mental condition affected his ability to file a timely motion. Additionally, while movant claims the "severity of ailments [has] precluded him from seeking review of these issues sooner" (ECF No. 7 at 3), he makes no attempt to identify any particular ailment or explain how it affected his ability to file a timely motion. Movant also makes no attempt to identify a time his mental condition improved to such a degree that he understood he could file the instant motion. Movant's conclusory assertion of an unspecified ailment that had an unspecified effect on his ability to file a timely motion does not permit this Court to conclude that this is one of the rare circumstances in which the extraordinary remedy of equitable tolling is appropriate.

Having determined that the motion was untimely filed, and having considered movant's response, the Court will dismiss the motion pursuant to Rule 4(b) of the Rules Governing Section 2255 proceedings in the United States District Courts. *See Day v. McDonough*, 547 U.S. 198, 210 (2006) (a district court may consider, on its own initiative, whether a habeas action is time-barred, but must provide notice to the movant before dismissing it as such).

*Bowen v. United States*, No. 4:19-CV-2736-RLW, 2020 WL 2420518, at *2–3

(E.D. Mo. May 12, 2020).

## Conclusion

Based upon the foregoing analysis, none of Petitioner's claims entitle him to relief. Petitioner's motion will be denied in its entirety.

## Certificate of Appealability

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *Id.* § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be

19

debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338, quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [Movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Petitioner has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside,

or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 1] is **DENIED.**

      **IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253.

      A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

      Dated this 29th day of March 2023.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE